UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:00CR227 (SRU) |
| | : | |
| v. | : | |
| | : | April 27, 2005 |
| MICHAEL HILLIARD | : | |

**MOTION FOR POST-*CROSBY* PROCEEDINGS ON REMAND**

The Government respectfully submits this memorandum in aid of proceedings to be held

on remand from the United States Court of Appeals for the Second Circuit.

I. **Procedural History**

On June 19, 2000, a federal grand jury in Connecticut returned a Third Superseding

Indictment against numerous defendants involved in drug trafficking activity primarily in and

around Bridgeport, Connecticut, including the defendant Michael Hilliard.  Count Twelve

charged him with conspiring to possess with intent to distribute 1,000 grams or more of heroin,

in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Count Thirteen charged him with conspiring to

possess with intent to distribute 50 grams or more of cocaine base ("crack"), in violation of 21

U.S.C. § 846.

The district court presided over two and a half days of evidence in a trial in January 2002

that resulted in guilty pleas, as well as two, month-long trials in November 2001, and March

2002.  The defendant entered a guilty plea to Count Twelve of the Indictment after jury selection

and before the beginning of the March 2002 trial.

The district court held a sentencing hearing on December 15, 2003.  The defendant's

Guidelines were calculated in the Pre-Sentence Report ("PSR"), which the district court adopted

as its findings, as follows.

> Drug Quantity (30 kilograms or more of Heroin)
> (§ 2D1.1(c)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  +38
>
> Use of Firearm in Connection with Offense
> (§ 2D1.1(b)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  +2
>
> Leadership Role (§ 3B1.1(b)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  +3
>
> Adjusted Offense Level . . . . . . . . . . . . . . . . . . . . . 43

Michael Hilliard PSR, ¶s 26-31.

At the time of sentencing, the district court declined to award the defendant a two-level

upward adjustment pursuant to Guidelines Section 3B1.4 for his use of a minor in connection

with the offense, finding that there was insufficient evidence that the defendant personally

directed a minor in the commission of the offense.[1]  Sentencing Transcript, 12/03/03, pp. 51-60.

It did, however, grant the defendant a three-level downward adjustment for acceptance of

responsibility which resulted in a Total Adjusted Offense Level of 40 and Criminal History

Category VI with a corresponding imprisonment range of 360 months to life.  Further, based

---

[1]     Subsequent to the sentencing of defendant Hilliard, on December 5, 2004, the Court of Appeals found in the case of *United States v. Lewis*, 386 F.3d 475 (2d Cir. 2004), that a defendant acting in a supervisory capacity in an extended narcotics trafficking enterprise which operated in the very same housing project in which Hilliard acted as a supervisor, should have his Guidelines enhanced for the use of a minor even if the defendant did not have personal knowledge that a minor was being employed by the organization.  ("[W]e agree with the majority of our sister circuits that have ruled . . . that § 3B1.4 does not require *scienter* in order to apply the enhancement, that is, it is not necessary for the government to show that a defendant had actual knowledge that the person undertaking criminal activity was a minor.")  In short, if the defendant in fact elects to be resentenced, the district court would be required to consider the applicable Guidelines range, including the use of a minor enhancement, when resentencing the defendant.  *See, United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005), and discussion, below.

upon certain tragic circumstances of the defendant's life, the district court departed from the

Guidelines by 30 months pursuant to Guidelines Section 5K2.0. The district court carefully

considered the sentence which it imposed, stating,

> I do want to speak a little bit more about why I settled in at the 330 month incarceration period. Mr. Hilliard, you have a long record. You have prior convictions. You've got a history of violence in your record. You were associated as a senior, at least a supervisory person in a very extensive and dangerous group selling drugs in Bridgeport for a long time. All those things would have pushed you up, somewhere, most likely somewhere north of 360 under the guideline range. And I've come off of that by ten percent or so to reflect the fact that you have had any number of these issues in your background that have not mitigated what you did but helped explain it a little bit and I think call for a lesser sentence.

> This is a very long sentence as it is, and that's a reflection frankly that you were heavily involved in a bad situation. I'm sure that it is a longer sentence than you hoped to receive today and I recognize it's not going to be easy on you or your family, and I have no intention of piling on here. You've had more than your share of troubles in your life but I have to think about a number of things.

> One is the punishment that you receive has to be commensurate with the crime that you committed, and I've got to hand a sentence that deters others from doing what you did, and you did some very bad things over an extended period of time and you hurt a lot of people, because a lot of people were using drugs which result in broken homes and so forth as a result of the Estrada organization.

Sentencing Transcript, 12/03/03, pp. 115-16.

The defendant timely filed a Notice of Appeal on December 19, 2003. On appeal, he

asserted that the district court erred when it calculated the defendant's Guidelines Base Offense

Level because there was insufficient evidence of a specific quantity of narcotics involved in the

offense of conviction. He also asserted that the district court improperly determined that he

should receive an upward adjustment for this role in the offense. By way of summary order

dated December 3, 2004, the Court of Appeals rejected the defendant's claims and affirmed the

judgment and sentence of the district court, but withheld its Mandate pending the decision of the

United States Supreme Court in the then pending cases of *Booker* and *Fanfan*. (*See*, *United States v. Estrada*, 116 Fed.Appx. 325, 2004 WL 2757401 (2nd Cir. 2004).)

On April 5, 2005, the United States Court of Appeals for the Second Circuit ordered a limited remand in this case upon consent of the Government[2] in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

## II.  Limited Remands in Light of *Booker* and *Crosby*

In *United States v. Booker*, 125 S. Ct. 738, 2005 WL 50108 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory."  *Booker*, 2005 WL 50108, at *16.  This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to appellate review for "reasonableness."  *Id.* at *24.

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

---

[2]     The Government respectfully disagrees with the Second Circuit's plain-error analysis for substantially the reasons set forth in *United States v. Rodriguez*, 398 F.3d 1291 (11th Cir., 2005).  Notwithstanding this disagreement, the Government consents to remand in recognition of *Crosby*'s binding authority in this Circuit.

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) (emphasis added). When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all the other factors listed in section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." *Id.*, 114.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Crosby*, at 117. In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the

5

judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." *Id.* "In making that threshold determination, the District Court should obtain the views of counsel, at least in writing, but 'need not' require the presence of the Defendant . . . ." *Id.*, at 120. The defendant should, however, have an "opportunity . . . to avoid resentencing by promptly notifying the district judge that resentencing will not be sought." *Id.*, at 118. "Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the defendant present, resentence in conformity with the [Sentencing Reform Act], *Booker/Fanfan*, and this opinion, including an appropriate explanation, *see* § 3553(c)." *Id.*, at 120.

In light of *Crosby*, then, the Government respectfully requests that the Court proceed as follows:

(1) Invite written submissions from the parties regarding the initial question of whether the court should have imposed a nontrivially different sentence if it had understood sentencing law as subsequently explained by the Supreme Court in *Booker*, and allow the defendant in such filing to opt out of resentencing; and if the defendant elects to proceed, then:

(2) Determine whether the Court would have imposed a nontrivially different sentence, in light of the advisory guidelines range and the other factors set forth in 18 U.S.C. § 3553(a); if not, the Court should place on the record an "appropriate explanation" for such decision; and

(3) If the Court determines that resentencing is necessary, it should vacate the sentence and resentence in conformity with the dictates of Fed. R. Crim. P. 32 (including requiring the defendant's presence in conformity with Fed. R. Crim. P. 43) and in light of the principles set forth in the Sentencing Reform Act, as well as *Booker* and *Crosby*.

Based upon the record of the sentencing proceeding, the government respectfully submits

that the district court carefully considered the range of appropriate sentences, and had every

intention of sentencing the defendant to the 330 month term of imprisonment which it imposed.

Thus, the government respectfully urges the district court, in conformity with the procedures

approved by the Court of Appeals, to state in writing that in light of the advisory guidelines

range (including the use of a minor adjustment prescribed by Section 3B1.4, and *United States v.*

*Lewis*,  386 F.3d 475 (2d Cir. 2004)), and the other factors set forth in 18 U.S.C. § 3553(a), it

would have imposed substantially the same sentence whether the Guidelines were binding or

purely advisory.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


ALEX HERNANDEZ
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct08345
915 Lafayette Boulevard
Bridgeport, CT 06604

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2005, a true and correct copy of the foregoing was

served by first-class mail upon defense counsel:

AUDEN GROGINS, ESQ.
400 Stillson Road
Fairfield, CT 06824


_____
Alex Hernandez