UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:00CR227 (SRU) |
| | : | |
| V. | : | |
| | : | |
| MICHAEL HILLIARD | : | May 26, 2005 |

**DEFENDANT'S MOTION IN SUPPORT OF RE-SENTENCING IN LIGHT OF POST-*CROSBY* PROCEEDINGS ON REMAND**

**I.     Procedural History**

On December 5, 2003, the defendant was sentenced by this honorable court to 330 months imprisonment, arising out of his plea to conspiracy to possess with intent to distribute 1,000 grams or more of heroin in violation of 21 U.S.C. § 841 (a) 1 and 846. At the sentencing hearing, the district court held the defendant responsible for 30 kilograms or more of heroin pursuant to U.S.S.G.§ 2D1.1 (c) (1) and enhanced the defendant's guideline level to level 38. The court further awarded a two level upward adjustment, for his use of a firearm in connection with the offense pursuant to § 2d 1.1 (b) 1. The district court also awarded a three level upward adjustment and increased the defendant's guidelines to level 43, for the defendant's managerial role in this offense, pursuant to U.S.S.G. § 3D 1.1 (b). The defendant was given a three level downward departure for acceptance of responsibility. This brought the defendant's adjusted offense level to level 40 and Criminal History Category VI.

The district court granted the defendant's requested departure, for a "Combination of Circumstances," pursuant to 5K2.0 and gave the defendant a slight reduction in his sentencing exposure. This departure reflected the defendant's emotional issues in dealing with the tragic death of both his teenage brother and the

death of his 9 year old son as well as considering that the defendant was pressured into rejoining the drug conspiracy based on a debt he owed to Frank Estrada. Lastly, the court also considered defendant's post-arrest rehabilitation efforts and his outstanding performance on the job after this arrest.

Hilliard subsequently filed a timely notice of appeal on December 19, 2003. In his appeal, the defendant raised the two issues regarding his guideline enhancements including: The court's error in finding that there was sufficient evidence to find him responsible for 30 kilograms or more of heroin and that there was insufficient evidence for the court to award a three level guideline enhancement for his role in the offense.

The Court of Appeals affirmed the judgment of the district court, but withheld it's mandate pending the outcome of the United States Supreme Court's decision in United States v. Booker and United States v. Fanfan. On April 5, 2005, the second circuit ordered a remand in the instant case, in light of USA v. Booker and USA v. Fanfan 125 S. CT. 738 (2005), as well as the Court of Appeals' opinion in United States v. Crosby, 397 F. 3d 103 (2d Cir. 2005).

II. **Post Booker Sentencing Reform**

In United States v. Booker and United States v. Fanfan, 125 S. Ct. 738 (2005), the Supreme Court relied on its holding in the case of Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that the defendant's sixth amendment rights are violated, when his sentence is enhanced, based on a judges determination of any fact, other than a prior conviction that was not found by a jury or admitted by the defendant. Id. at 477. Following the Apprendi holding, the court in Booker held that the sixth amendment precludes the enhancement of the defendant's sentence, based on a court's factual

findings that were not found by a jury or admitted by the defendant Id. at 738. Justice Breyer articulated the court's decision in Booker and which held that the mandatory application of the sentencing guidelines is incompatible with the sixth amendment, and thus, the court severed and excised the provision of the federal sentencing guidelines statute that makes the guidelines mandatory. Id. 757. The result is a post Booker sentencing reform which directs that a district court, when sentencing a defendant, to not only consider the sentencing guidelines but to also consider the factors set forth in 18 U.S.C. § 3553 (a) (2). The court must then impose a sentence, that is sufficient but not greater than necessary, to achieve a reasonable sentence under 18 U.S.C. § 3553 (a) (2). Under Booker, the factors to be considered by the court in sentencing are as follows:

1. The nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553 (a) (1).

2. The kind of sentencing available 18 U.S.C. § 3553 (a) (3).

3. The guidelines and policy statements issued by the sentencing commission, including the non-mandatory guideline range § 18 U.S.C. § 3553 (a) (4).

4. The need to avoid unwarranted sentencing disparity amongst defendants with similar records that have been found guilty of similar conduct. 18 U.S.C. § 3553 (a) (6).

5. The need to provide restitution to any victim of the offense. 18 U.S.C. § 3553 (a) (7).

In United States v. Ramum, __ F. Supp. 2d. ___ (2005 WL 161223) (E.D. Wisconsin) Judge Adelman, a district court judge from the eastern district of Wisconsin,

stated: "Booker directs district courts to consider all of the § 3553 (a) factors, many of which the guidelines either reject or ignore… The guidelines are not binding, and a court may not justify a sentence outside of them by sighting factors that take the case outside the "Heartland." Court's are free to disagree, in individual cases and, in the exercise of discretion, with the actual range proposed by the guidelines, so long as that ultimate sentence is reasonable and carefully supported by the reasons tied to § 3553 (a) factors." Id.

In United States of America v. Crosby, 397 F. 3d 103, 113 (2d Cir. 2005), the second circuit determined that it would remand pending appeals involving challenges to sentences, imposed prior to the Booker decision. The purpose of the remand is to allow the district court to have an opportunity to consider whether to re-sentence the defendant. Id. at 117. "A sentence would not be reasonable, regardless of the length, if legal errors, properly to be considered on appeals, led to its imposition." Id. at 126. Crosby identified the types of procedural errors that could be identified in the sentencing:

> First, and most obviously, a sentencing judge would violate the sixth amendment by making factual findings and mandatorily enhancing a sentence above the range applicable to the facts found by the jury or admitted by the defendant. This is the error that incurred in Booker's case as the supreme court's in its substantive opinion made clear…. Id. at 127.

In Crosby the court determined that pending appeals would be remanded to the district court, "not for the purpose of requiring re-sentencing, but for the more limited purpose of permitting the sentencing judge to determine whether to re-sentence, now fully informed of the new sentencing regime" and if appropriate, for the court to re-sentence the defendant. Id. at 117.

"Although the duty to comply with § 3553 (a) existed prior to Booker/Fanfan, it is unlikely that a sentencing judge, anticipating that decision, would have anticipated the full import of the remedy opinion, and considered the § 3553 (a) factors, including the guidelines, with the awareness of the excision of subsection 3553 (b) (1)…"

Crosby further held the following on the issue of whether to re-sentence in a particular case:

> Obviously, any of the errors in the procedure for selecting the original sentence discussed in this opinion would be harmless, and not prejudicial, under plain error analysis, if the judge decides on remand, in full compliance with now applicable requirements, that under the post Booker/Fanfan regime the sentence would have been essentially the same as originally imposed. Conversely a district judge's decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies the plain error analysis. Crosby, supra, at 117

**III.   THIS HONORABLE COURT WOULD LIKELY IMPOSE A NONTRIVIALLY DIFFERENT SENTENCE IN HILLIARD'S CASE, IN LIGHT OF THE BOOKER AND FANFAN HOLDINGS.**

The defendant asserts that he should be re-sentenced in light of the Supreme Court's decision in Booker/Fanfan. He asserts that there are mitigating factors, that the court did not consider in his first sentencing, which should now be considered under the Booker sentencing reform. He further asserts that his guidelines were enhanced by the district court's fact finding which violates his sixth amendment right to a jury trial.

In terms of his guideline level, the defendant asserts that the court imposed several guidelines enhancement's which violated the sixth amendment in light of Booker/Fanfan. First, the district court enhanced the defendant's guidelines level to a level 38, by attributing to him a quantity of 30 kilograms or more of heroin pursuant to

U.S.S.G. § 2D1.1.  This increase was not based on a jury finding or by any admissions made by the defendant.  Instead this guideline increase resulted from the court's fact-finding which included facts elicited from the testimony of Hilliard's codefendant's trials.  First, the court determined, by a preponderance of the evidence, that Hilliard was responsible for 30 kilograms or more of heroin and this conclusion was based on testimony of cooperating witnesses from Hilliard's co-defendant's trials.  This legal error is the same legal error that occurred in United States v. Booker, 125 S. CT. 738 (2005).  Both the district court in Booker and the district court in the instant case, were required to apply mandatory guideline enhancements which were subsequently held to violate the defendant's sixth amendment right to trial by jury.  Booker, supra, at 738.  In the instant case, the district court was required, pre-Booker, to increase the defendant's guidelines if it found, by a preponderance of the evidence that Hilliard was responsible, for a drug quantity of 30 kilograms or more of heroin.  U.S.S.G. § 2D1.1.  The court was further required to increase Hilliard's guidelines by three levels if it found, by a preponderance of the evidence, that the defendant played a managerial role in this offense pursuant to U.S.S.G. § 3B1.1.

In short, the district court imposed the mandatory guideline enhancements that no longer apply under the Booker/Fanfan holdings.  It is the defendant's assertion, that the court would have given a materially different sentence, without the mandatory application of the sentencing guidelines.

Furthermore, the defendant asserts that the district court did not consider the full range of mitigating factors, set forth in 18 U.S.C. § 3553 (a) when making its sentencing determination.  Several of the personal mitigating factors asserted by Hilliard at

sentencing were not substantial enough to warrant a departure pursuant to 5K2.0 of the sentencing guidelines should now be considered under the post <u>Booker</u> sentencing regime.  These factors include:  The severe physical and emotional abuse inflicted on the defendant and his brother by his father, throughout their childhood; the severe depression that the defendant suffers from his own overwhelming family ties and circumstances.  This includes the fact that Hilliard cannot contribute emotionally or financially to the support of his four minor children because he is imprisoned for such a substantial period of time and the fact that these children must be raised by his fiancé, Elizabeth Cajias, as a single mother.  The district court also declined to consider the findings of psychiatrist, Dr. Zeman, who completed a psychiatric evaluation on Hilliard on February 20 and April 9, 2003.  This psychiatrist diagnosed Hilliard as suffering from major depressive disorder, recurrent and moderate, and suffering from personality disorder with antisocial and impulsive features.   In fact, the district court indicated that it would not consider these emotional factors, as far as a departure was concerned, as it did not believe there was a connection between Hilliard's state of mind and the commission of the instant offense sentencing transcript, December 15, 2003, p. 112.  These important mitigating factors were not substantial enough to meet the permissible departures allowable under 5K2.0 of the sentencing guidelines.  However, Hilliard's emotional and psychiatric condition can now be considered under <u>Booker</u> and 18 U.S.C. § 3553 (a) in re-sentencing the defendant.

     In conclusion, the defendant asserts, that if the court would have considered these factors at the time of the original sentencing, said mitigating factors would have had a materially different impact on the defendant's sentence.

          Respectfully submitted,
          The Defendant, Michael Hilliard


By _____
     AUDEN C. GROGINS
     Grogins & Grogins
     400 Stillson Road
     Fairfield, CT 06824
     Tel. (203) 335-2112
     Fax (203) 335-7214
     Juris No. 310069
     Fed. Bar. No. CT07570

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2005, a true and correct copy of the foregoing was served by first class mail upon plaintiff's counsel:

Alina Reynolds, Esq.
Alex Hernandez, Esq.
Office of the U.S. Attorney
915 Lafayette Boulevard
Bridgeport, CT 06604

                                                                                                      _____
                                                                                                      Auden Grogins